FRED ROGERS v. THE STATE.

No. 8943.    Delivered May 6, 1925.

1.—Possessing Intoxicating Liquor—Misconduct of Jury—Reversible.

Where a jury in their deliberations, discuss matters not in evidence, of a character calculated to injure the rights of appellant, it cannot be said that he has been accorded that fair and impartial trial which our statutes seek to accord him. See Subdivision 7 and 8 of Art. 837 C. C. P.

2.—Same—Misconduct of Jury—Continued.

And so it is under Secs. 7 and 8 of Art. 837 and probably Art. 748, C. C. P. it is not permissible for an officer to go into the jury room, and discuss in any manner the case with the jury, even though he be invited by the jury to do so.

Appeal from the District Court of Potter County. Tried below before the Hon. Henry S. Bishop, Judge.

Appeal from a conviction for the unlawful possession of intoxicating liquor; penalty, one year in the penitentiary.

The opinion states the case.

*A. M. Mood,* for appellant.

*Tom Garrard,* State's Attorney, for the State.

MORROW, Presiding Judge.—The offense is the unlawful possession of intoxicating liquor; punishment fixed at confinement in the penitentiary for one year.

The Ideal Hotel was conducted by the appellant and his wife. The premises were searched and on the ground under the dining room floor there were found two half-gallon jars of whiskey. There was a hole in the floor due to the decay of some planks. This hole was partly covered by a piece of furniture, and the whiskey was discovered upon the removal of the furniture.

According to his testimony, the appellant was practically blind. He could distinquish nothing but the bulk of moving objects. Such had been his condition for a number of years. When the whiskey was found, he disclaimed any knowledge of it or ownership of it. The wife of the appellant also disclaimed any knowledge of the presence of the whiskey. She claimed that the hole in the floor was due to the decay of the planks.

There was evidence that a woman of questionable character had occupied one of the rooms in the house for a day or two.

Appellant had some years before been indicted for the possession of whiskey which he explained had been put there by some one else.

Reliance for a reversal is had upon the transgression of subdivisions 7 and 8 of Art. 837, C. C. P., from which we quote:

"7. Where the jury, after having retired to deliberate upon a case, have received other testimony; or where a juror has conversed with any person in regard to the case."

"8. Where, from the misconduct of the jury, the court is of opinion that the defendant has not received a fair and impartial trial."

There is no material conflict in the testimony given by the jurors upon the hearing of the motion for new trial. Early in their deliberation, eight voted guilty and four voted not guilty. After this ballot was taken, Kennerley, one of the jurors who voted not guilty said:

"Well, if you fellows knew what I know, you would not vote guilty too; because I was here when this man was arrested, and there was some other fellow with him, some young fellow that they brought along with him, and I believe that that whiskey belonged to that young man that they brought along with him."

It also appeared that Kennerley told the jurors that before appellant occupied the hotel it bore the reputation of a house of prostitution. Some of the jurors protested and stated to Kennerley that he was not a qualified juror. A debate ensued which, according to the record, became more or less heated and finally took a turn whereby the constable who was detailed to wait upon the jury was called upon. A conversation took place between him and some of the jurors which he described thus:

''One of them said: 'We have got a man on this jury who has got to be put off. He is disqualified and has got no business on this jury.'

Something was said about calling the court and they wanted Kennerley put off the jury because he was not qualified and had no business there.''

Kennerley said: ''I am the man they are talking about.''

In his testimony the officer remarked:

''When twelve men are all talking at once, it is right hard to tell what every one says. I know I got the impression some way that Kennerley was the man they were talking about.''

To the jurors the officer remarked further:

''Why, he has been here for 35 years that I know of. It looks to me he ought to be a qualified juror.''

One of the jurors said: ''Just wait a minute.'' The officer retired and shut the door. He later learned that the verdict had been reached.

Kennerley claim that in making the remarks his intentions were good; that he favored an acquittal; that he was ''sort of bluffed into voting guilty''. He said:

''It looked kind of like steps were going to be taken to put me off of the jury; I didn't know whether he could do it or not, but then he called the Deputy Sheriff, and said he would have the court called, and I told them if that was the way of it, to keep down trouble, I would just vote guilty—and that quieted everything.''

Three other members of the jury, before these statements were made and the controversy arose, had voted not guilty. At the termination of the controversy, they also agreed to a verdict of guilty.

It seems that from Kennerley's declarations two new matters came to the knowledge of the jury, namely: first, that the juror saw a man in company with the appellant at the time of his arrest, which man, in the opinion of the juror, was in possession of the whiskey; second, that the hotel conducted by the appellant had previously borne the reputation of a house of prostitution.

The receipt of these matters were violative of Section 7 of the statute on the subject of new trials which has been quoted. The controversy in the jury room and the conversation with the officer

revealed by the testimony, if not violative of that part of Sec. 7 which prohibits a conversation with any person in regard to the case, does come within the purview of subdivision 8 of Art. 837 and probably Art. 748, C. C. P., which reads thus:

"No person shall be permitted to be with a jury while they are deliberating upon a case, nor shall any person be permitted to converse with a juror after he has been impaneled, except the presence and by the permission of the court, or except in a case of misdemeanor where the jury have been permitted by the court to separate; and in no case shall any person be permitted to converse with the juror about the case on trial."

The new testimony which bore the interpretation that the appellant was conducting an establishment which, before he entered it, had the reputation of a house of ill-fame, was calculated to affect his character and prejudice his case, and especially is this true when considered in the light of the testimony that on one occasion a woman of questionable character had occupied a room in the hotel of the appellant. Evidence of this nature coming before the jury in its retirement has often been held prejudicial and upon occasions has resulted in a reversal of the judgment. See Branch's Ann. Texas P. C., and collation of cases on pages 290.

The fact that in the appellant's company at the time of his arrest there was another who was charged with violating the liquor law and who, in the opinion of the juror, was transgressing the prohibition law was not of a helpful nature.

The conversations of the officer mentioned were obviously outside of the scope of the jury's relations with the officer in charge of them. See Booker v. State, 54 Texas Crim. Rep. 80; Dansby v. State, 34 Texas Reports 392; Hogan v. State, 28 S. W. Rep. 949.

Viewing the record as we find it, we are of the opinion that both the letter and spirit of the statutes to which reference has been made, the purpose of which is to promote the administration of justice by maintaining the purity of the jury verdict and to promote a fair and impartial trial, have been transgressed. So believing, we order that the judgment be reversed and the cause remanded.

*Reversed and remanded.*